Strafford
No. 2008-011

SUZANNE ORR & a.

v.

DAVID A. GOODWIN & a.

Argued: June 26, 2008
Opinion Issued: July 15, 2008

512

*Shaines & McEachern, P.A.*, of Portsmouth (*Laurie A. Lacoste* on the brief and orally), for the plaintiffs.

*Boynton, Waldron, Doleac, Woodman & Scott, P.A.*, of Portsmouth (*William G. Scott* on the brief and orally), for the defendants.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Patrick C. McHugh* and *Matthew Johnson* on the brief), for the New Hampshire Association of Realtors, as *amicus curiae*.

GALWAY, J. The plaintiffs, Suzanne Orr and Nelson Bolstridge, appeal an order of the Superior Court (*Houran*, J.) granting summary judgment to the defendants, David A. Goodwin, Ann Goodwin, Aaron Goodwin and Kylie Goodwin. We affirm.

The parties do not dispute the relevant background facts. In October 2004, the parties executed a sales agreement in which the defendants agreed to purchase real and personal property in Madbury from the plaintiffs for $1,020,000. Upon execution of the agreement, the defendants paid a deposit of $10,000. The parties' sales agreement contained a clause titled "Liquidated Damages," which stated: "If the Buyer shall default in the performance of their [*sic*] obligation under this agreement, the amount of the deposit may, at the option of the Seller, become the property of the Seller as reasonable." In February 2005, an addendum was executed confirming that the defendants had paid an additional $15,000 as a deposit. The addendum also provided that the sale was to close by October 15, 2005.

In October 2005, the defendants informed the plaintiffs that they were not able to sell their home and, therefore, could not afford to purchase the plaintiffs' property. The plaintiffs retained the $25,000 deposit and it appears that there was virtually no further contact between the parties until early 2007.

Despite retaining the deposit, the plaintiffs instituted this suit in February 2007 to recover various damages, including carrying costs on the Madbury property and costs incurred in purchasing and carrying other property, as a result of the defendants' failure to consummate their agreement. The defendants moved for summary judgment, which the trial court granted. After their motion for reconsideration was denied, the plaintiffs filed this appeal.

When we review a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Carter v.*

*Concord Gen. Mut. Ins. Co.*, 155 N.H. 515, 517 (2007). If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

On appeal, the plaintiffs first contend that the trial court erred in concluding that the liquidated damages clause of the parties' contract was enforceable. Interpretation of the parties' written agreement is a question of law, which we review *de novo. Czumak v. N.H. Div. of Developmental Servs.*, 155 N.H. 368, 373 (2007). When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. *Id.*

■ According to the plaintiffs, the liquidated damages clause fails two of the three criteria for a valid liquidated damages provision and, therefore, cannot be enforced against them. Before a liquidated damages clause will be enforced, three conditions must be met: (1) the damages anticipated as a result of the breach are uncertain in amount or difficult to prove; (2) the parties intended to liquidate damages in advance; and (3) the amount agreed upon must be reasonable and not greatly disproportionate to the presumable loss or injury. *Shallow Brook Assoc's v. Dube*, 135 N.H. 40, 46 (1991). The plaintiffs concede that the damages were uncertain in amount. Accordingly, the first factor is met.

As to the second factor, the plaintiffs contend that it was not their intention or belief that "their damages would be limited to the $25,000.00 deposit." The amount of damages, however, is not at issue in considering this factor. The relevant consideration is whether there is evidence that the parties intended to liquidate their damages in advance. Here, the contract contains a clause specifically titled "Liquidated Damages," which initially demonstrates an intent to liquidate damages. The plaintiffs contend, however, that because the clause does not use the term "liquidated damages" outside the title, it is insufficient to demonstrate an intent to provide for such damages. At oral argument, the plaintiffs also contended that the term "reasonable" as used in the clause applies to the term "property," and thus does not demonstrate an intent to define liquidated damages. We are not persuaded by either argument.

Although the term "liquidated damages" appears only in the title, the language of the clause defines how damages are handled by delineating the rights of the sellers relative to the buyers' deposit in the event of default, a result that would not change had the term been repeated in the body of the clause. Further, to interpret the clause as suggested by the plaintiffs

would allow them to retain the deposit as "reasonable property." The plaintiffs, however, do not indicate what the term "reasonable property" means. The interpretation advanced by the defendants, in contrast, regards the term "reasonable" as defining the liquidated damages referenced in the title. We believe the defendants' interpretation to be sounder and in line with the apparent intent of the clause. Given the title of the clause and the rights it defines, we conclude that the clause was intended to provide for liquidated damages and, therefore, that this provision evinces an intent by the parties to liquidate damages in advance. *See id.* Therefore, the second factor has been met.

"The third prong of the test requires that the amount stipulated was a reasonable one, that is to say, not greatly disproportionate to the presumable loss or injury." *Id.* at 47 (quotation omitted). In determining whether the stipulated amount is reasonable, "[o]ur function on appeal is to determine whether a reasonable person could have arrived at the same determination as the trial court, based on the evidence, and we will not upset the trial court's finding as long as it is substantiated by the record and is not erroneous as a matter of law." *Id.* (quotation omitted). "Thus, it is not enough that we might have ruled differently had we been asked to decide this question in the first instance. Rather we must affirm the trial court's finding unless it is unsupported by the evidence." *Id.*

While we have stated that the relevant consideration is whether the amount stipulated is not disproportionate to the presumable loss, we have also stated that it is proper to look at the actual damages suffered in determining whether the amount is reasonable. *Id.* at 47-48. Therefore, we have adopted a two-part test for assessing the reasonableness of the amount stipulated whereby we "first judge whether the provision was a reasonable *estimate* of difficult-to-ascertain damage at the time the parties agreed to it." *Id.* at 48 (quotation omitted). If it is a reasonable estimate, we must then conduct a retrospective appraisal of the liquidated damages provision, and if the actual damages turn out to be easily ascertainable, we must then consider whether the stipulated sum is unreasonable and grossly disproportionate to the actual damages from a breach. *Id.* at 48-49. If so, the liquidated damages provision will be deemed unenforceable as a penalty, and the aggrieved party will be awarded no more than the actual damages. *Id.* at 49. Thus, "even if the liquidated sum is reasonable in light of the anticipated or presumable loss, the provision will not be enforced if the actual loss to the party is minimal *and* easy to prove." *Id.* at 48; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 356 comment *b* at 157-58 (1981). As the parties alleging that the liquidated damages amount is unreasonable, the plaintiffs bear the burden of proof. *Dube*, 135 N.H at 50.

■ ■ In conducting the above analysis, we note that in a land sale contract the proper measure of damages is the seller's loss of bargain; that is, the difference between the contract price and the actual value of the real estate at the time of the breach. *Id.* at 49. Additionally, while, generally, damages may be recovered for those harms that are reasonably foreseeable at the time the parties entered into the contract, *see Indep. Mechanical Contractors v. Gordon T. Burke & Sons*, 138 N.H. 110, 114 (1993), much of the damages claimed by the plaintiffs arise from costs associated with various transactions related to other properties, and undertaken by the plaintiffs months after the parties here signed their agreement. Because those costs were not reasonably foreseeable at the time the contract was made, we do not consider those alleged damages in determining whether the liquidated damages clause is reasonable.

■ Turning to the first consideration, we note, as we did in *Dube*, that no evidence was presented to suggest that the liquidated damages provision was an unreasonable estimate of difficult-to-ascertain damages at the time the parties agreed to it, *see Dube*, 135 N.H. at 49; nor do the plaintiffs argue that the provision was an unreasonable estimate. Thus, the first consideration is satisfied.

Second, the plaintiffs did not present evidence about the actual value of the real estate at the time of the breach. Thus, the plaintiffs did not demonstrate that their actual damages are easily ascertainable. Also, the plaintiffs' response to interrogatories state that the property had since been re-listed for approximately $20,000 less than the amount the defendants had offered to pay, indicating that any actual loss of bargain damages are not grossly disproportionate to the liquidated damages amount.

Furthermore, as stated above, the basis upon which a liquidated damages clause may be invalidated under this consideration is if it is excessive or punitive. *Id.* We are not aware of, and the plaintiffs do not point to, any authority supporting their proposition that a liquidated damages clause ought to be invalidated as being insufficient, particularly where the liquidated damages are retained only at the option of the injured party. Because the plaintiffs did not demonstrate that their damages were easily ascertainable at the time the contract was made or breached, and because the amount at issue is not a penalty or grossly disproportionate to any actual loss from the breach, we conclude that the third factor has been satisfied. Accordingly, the trial court did not err in upholding the liquidated damages provision.

The plaintiffs contend that even if the liquidated damages provision is valid, it does not limit them to receiving the liquidated damages as their sole and exclusive remedy. This is so because, according to the plaintiffs,

the clause does not define liquidated damages as the sole available remedy, and their retention of the liquidated damages does not bar a suit for their actual damages. The trial court concluded that even if there was a genuine dispute over the exclusivity of the liquidated damages remedy, it was immaterial because the plaintiffs' retention of the deposit as liquidated damages constituted an election of remedies.

We are not aware of, and the parties do not point to, any case in New Hampshire directly addressing this issue. Other courts have found that the designation of a deposit as "liquidated damages" evidences the parties' intention to limit the seller's recovery to the stipulated amount. Annotation, *Provision in Land Contract for Liquidated Damages upon Default of Purchaser as Affecting Right of Vendor to Maintain Action for Damages for Breach of Contract*, 39 A.L.R.5TH 33, 54-55 (1996). Moreover, the absence of a provision expressly permitting the recovery of actual damages has been held to prevent a seller from pursuing such a remedy. *Id.* at 58-61. There are, however, instances where courts have found that use of permissive terms, such as "option," permit a seller to sue for actual damages despite the existence of a valid liquidated damages provision. *Id.* at 67-69. Likewise, there are courts that have permitted a non-breaching party to retain liquidated damages and then to pursue an additional claim for actual damages, even in the absence of permissive language. *Id.* at 77-79. We are persuaded that the rule most in line with our jurisprudence is that liquidated damages and actual damages are, absent express language permitting recovery of both, mutually exclusive remedies, and that where an election is permitted, the election of one remedy bars pursuit of the other.

In *General Linen Services, Inc. v. Franconia Investment Associates, L.P.*, 150 N.H. 595, 599-600 (2004), we concluded that because a provision for liquidated damages was unenforceable, the plaintiff was entitled to recover actual damages. Thus, the plaintiff could seek actual damages only because liquidated damages were unavailable. We reached a similar conclusion in *Technical Aid Corp. v. Allen*, 134 N.H. 1, 22-23 (1991). These decisions indicate that the right to recover liquidated damages and the right to recover actual damages are mutually exclusive remedies. This conclusion comports with the general purpose of a liquidated damages provision to eliminate the right and responsibility of a plaintiff to prove actual damages. 24 R. LORD, WILLISTON ON CONTRACTS § 65:31, at 359-60 (4th ed. 2002). Thus, although the clause does not specifically define liquidated damages as the plaintiffs' sole remedy, when the plaintiffs availed themselves of it, they foreclosed their pursuit of actual damages. To

conclude otherwise would permit recovery of both liquidated and actual damages, a result contrary to the purpose of a liquidated damages clause and decisions of this court.

The plaintiffs contend that any "mistake" they may have made in retaining the deposit as liquidated damages should not operate to bar them from pursuing their actual damages. The trial court, relying upon the RESTATEMENT (SECOND) OF CONTRACTS § 378, at 228 (1981), concluded that the plaintiffs' election of liquidated damages was final. The plaintiffs argue, based upon the same provision of the RESTATEMENT, that because the defendants have not materially changed their position based upon their election and because their election was made with ignorance of material facts, they are not precluded from seeking their actual damages. Assuming for purposes of this opinion that the RESTATEMENT applies, we disagree.

■ First, the plaintiffs do not allege any material facts of which they were ignorant in making their election. They allege only that they interpreted the contract to permit recovery of liquidated damages and actual damages. As such, we do not find this argument availing.

■ The plaintiffs' argument that they are not bound by their election because there has been no material change by the defendants is in accord with general principles of contract law that when a party has a choice of remedy and elects one, he or she is not bound by his or her first choice in some instances. *See id.*; *see also* 13 R. LORD, WILLISTON ON CONTRACTS § 39:34, at 650 (4th ed. 2000). The electing party, however, will be bound by his or her choice when there has been justifiable reliance or a material change by the other party such that a new selection would be unfairly prejudicial. 13 R. LORD, WILLISTON ON CONTRACTS § 39:34, at 650; 12 A. CORBIN, CORBIN ON CONTRACTS § 1220, at 495, 503-04 (Interim ed. 2002). According to the RESTATEMENT, "[a] change of position is 'material' within the meaning of this Section if it is such that in all the circumstances a shift in remedies would be unjust." RESTATEMENT (SECOND) OF CONTRACTS § 378 comment *a* at 228.

■ The trial court concluded that the plaintiffs' election prevented them from pursuing a claim for their actual damages. Although the trial court did not specifically find that permitting the plaintiffs to seek a shift in remedies would be unjust, we assume that it made all subsidiary findings necessary to support its ruling that the plaintiffs are precluded from pursuing a claim for their actual damages. *See N.H. Dep't of Envtl. Servs. v. Mottolo*, 155 N.H. 57, 63 (2007). Here, the trial court had evidence that the plaintiffs retained the deposit, an act indicating that they had elected the liquidated damages as their remedy and had, therefore, opted not to pursue a claim

for their actual damages. Further, the plaintiffs retained the deposit, without communication to the defendants, for nearly a year and a half before instituting this suit. Indeed, the plaintiffs have never indicated that they would return the liquidated damages prior to seeking to recover their alleged actual damages. Thus, the defendants have been deprived of the use of $25,000 for a substantial time without any indication that it might be returned and the plaintiffs have had the benefit of the money without any offer to return it prior to seeking additional damages. Under these circumstances, we conclude that the trial court did not err in determining that the plaintiffs' election was final, precluding a claim for their actual damages.

Finally, the plaintiffs contend that the parties' contract should be construed against the defendants because the parties had unequal bargaining power, and because the defendants did not disclose a material contingency. Based upon the record before us, we are not persuaded by the plaintiffs' arguments, nor are we convinced that they have any impact on the validity or enforceability of the parties' contract and its liquidated damages clause. Accordingly, because the parties' liquidated damages clause is valid, and because the plaintiffs are bound by their election of the liquidated damages pursuant to that clause, we hold that the trial court did not err in granting summary judgment to the defendants.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ, concurred.